**FILED**

March 11, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ CV _____

DEPUTY

## UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISTRICT
## OF TEXAS

KENON L BURNS,                                           Case # 3:23-cv-02092-N-BK

Plaintiff                                                    **6:23-cv-00698**

V.

THE DEPARTMENT OF THE UNITED STATES ARMY,

THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

DEFENSE FINANCE ACCOUNTING SERVICE,

DEFENSE MANPOWER DATA CENTER,

TRICARE,

Defendants

-------------------------------------------------------------/

U.S. District Court
Northern District of Texas

## AMENDED COMPLAINT PARTIES JURISDICTION AND FACTS

COMES NOW, the Plaintiff, Kenon L. Burns, a former United States Army combat servicemember and current combat veteran, here to set forth facts and claims for damages incurred through discrimination, negligence, and violation of Title I of the Americans with Disabilities Act by the Defendants United States Army et al.

Plaintiff, Kenon L Burns was from March 2000 until September 2009 an employee of and unmanned aerial vehicle soldier pilot for the United States Armed Forces, Department of Defense, Department of the United States Army, at all times relevant to the facts and claims set forth in this complaint.

All of the acts or failures to act alleged herein are directly attributable to Defendants and are continual, daily.

Plaintiff and Defendants are and have been engaged in multiple concurrent contractual agreements that Defendants obligated upon themselves and have without cause and without due process obliged to abrogate their own agreements and in doing so have broken federal law, security clearance guidelines set forth by United States Congress, violated veteran Combat Related Special Compensation regulations, and violated the Americans with Disabilities Act.

Statute of limitations do not and should not apply in this particular complaint, as the violations are egregious, the damages numerous, the violations are ongoing, and tens of thousands of veterans if not more may be assisted (or harmed) as a result of this one present complaint. For precedence evaluation, I ask you to pontificate on:

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982): This case concerned violations of the Fair Housing Act. The Supreme Court held that where a plaintiff alleges a policy and practice of discrimination that was ongoing, the complaint is not time-barred.

National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002): This Supreme Court case articulated the concept of "hostile environment" harassment being considered a continuing violation, which could potentially be applied in other contexts to argue the continuing nature of the harm.

U.S. District Court
Northern District of Texas

## COMPLAINT CAUSE I FOR ACTION: <u>DISCRIMINATION</u>

ILLEGAL, UNETHICAL AND DANGEROUS SECURITY CLEARANCE REVOCATION CAUSING
A THREAT TO NATIONAL SECURITY

1. Plaintiff Kenon L Burns seeks a jury to consider the complaint and award damages related to alleged acts and/or failures to act on the part of The United States Department of the Army, the US Department of Veterans Affairs, and Defense Finance and Accounting Service.

2. This situation was and is unnecessary and was and is preventable. It has and continues to cause great pain to Mr. Burns through discrimination and negligence on the part of the United States Army, et al.

3. The discrimination arose when the Defendant revoked Mr. Burns' security clearance because of mental health issues and also as a reprisal Ironic though it is, Mr. Burns is a man that has piloted an aircraft in combat that is now hanging from the ceiling of the Smithsonian Air and Space Museum, and has an AAFES credit card, yet cannot gain access to a military base to be able to utilize it. The irony is multiplied when acknowledging the fact that the very people who have made the decisions that have affected Mr. Burns' life negatively for years are fellow soldiers of his who have served not even one second in a combat or hazardous duty area.

4. As Mr. Burns has been extremely vocal about these matters and has been fighting these battles that the United States Army has commenced against him since 2008 (security clearance) and 2014 (TDRL) respectively, it should be no surprise to Army, VA, or DFAS general counsel that Mr. Burns now seeks to go to trial. No other military members should have to go through what he went through and then be abandoned by the United States Army. Perhaps when enough people hear what happened to Mr. Burns, someone, somewhere will assist him off this battlefield that the United States Army has created for him.

5. For Mr. Burns to answer the call to affix bayonets in combat for the United States Congress and the people of the United States not once, not twice, but three times, get stop-lossed along the way, STILL reenlist, and then be treated in this fashion by the United States Army is beyond repugnant. Beyond disgusting.

6. The Plaintiff, Kenon L Burns, is and was a United States Army three-time Operation Iraqi Freedom combat veteran, having served conspicuously in Operation Iraqi Freedom 1, Operation Iraqi Freedom 05-07, and Operation Iraqi Freedom 08-09. In Iraq's multi-national corps with 4th Infantry Division, under the command of the late General Raymond Odierno and the late 1SG Bobby Mendez Mr. Burns for over a year lived in what was arguably the most mortared location in theatre known as Baqubah, Diyala Province, Iraq, mortared and sniped at by enemy fire often while directly involved in intelligence and flight operations directly assisting combat engagements such as Operation Backpack, Operation Trailblazer, Operation Centaur Rodeo, Operation Centaur Strike II, Operation Centaur Strike III, Operation Sinbad and Operation Red Dawn to name a few, and directly aided troops from Task Force 121 with intelligence while himself entrenched in local enemy combat engagements in and around Baqubah, Iraq with 4th Infantry Division. Mr. Burns not only served in Iraq under 4th Infantry Division, but also has combat patches for intelligence and flight operations work done under the command of 1st Cavalry Division, as well as 10th Mountain Division. Among Mr. Burns'

U.S. District Court
Northern District of Texas

many awards and citations are the Army Commendation medal, the Army Achievement Medal, the National Defense Service medal, the Aviation Badge, the Wheeled Vehicle Driver/Mechanic Badge and many more. Mr. Burns is not what one would colloquially term in Army vernacular as a "Green-zoner." As a matter of fact, the only reason Mr. Burns does not have a Purple Heart or Combat Action badge is because he has yet to apply, and the reason for that is the same reason he is now ashamed for ever having served in the United States Army in the first place, AND the same reason why right now recruitment into the United States military is at an all-time embarrassing low: why bother? The United States Army taught Mr. Burns to "never leave a fallen soldier behind," however, the organization that is the United States Army does NOT in principle practice what it preaches. The facts mentioned herein are at all times relevant to the claims set forth in Mr. Burns complaint.

7.  As the United States Army, VA, and DFAS counsel reads the claims set forth in this complaint, it may behoove them to bone up on their knowledge of the same content that   the plaintiff has, which are the following United States regulations that govern the incidents that have been allowed to happen to him and the damages from which he is still suffering. I submit and have proof that the United States Army is guilty of contravention of these regulations and more, and as a result, are evading responsibility from the mess that non-combat subordinates of its organization have put Mr. Burns through. The defendants have shown that they do not care about Mr. Burns. Perhaps a jury will.

8.  The United States Army failed Department of Defense Directive 5200.2-R, Personnel Security Program (PSP) when they failed to notify Mr. Burns of his then impending revocation, then failed the same regulation when his clearance was revoked and violated  this regulation a third time when they failed to notify Mr. Burns that his clearance was in fact revoked.

9.  The United States Army has failed Army Regulation 380-67, Personnel Security Program which provides guidance on the security clearance process for military personnel, including procedures for granting, denying, or revoking clearances for the same reasons that it failed DoD Directive 5200.2-R.

10. The United States Army has failed Department of Defense Directive 5220.6, Defense Industrial Personnel Security Clearance Review Program, which covers the process for reviewing and adjudicating security clearances, including those for military personnel.

11. The United States Army has failed Army Regulation 600-8-2, Suspension of Favorable Personnel Actions (Flags), which can be placed on a soldier's personnel record, including security clearance flags, which may lead to suspension or revocation of clearances.

12. The United States Army failed in adhering to Adjudicative Guidelines for Determining Eligibility for Access to Classified Information in failing to provide the criteria used to evaluate Mr. Burns suitability for a security clearance. Disqualifying factors may lead to  the revocation of a clearance, but Mr. Burns was not even notified that his clearance was subject to revocation or what (if any) the violation was that led up to such a decision.

13. The United States Army failed to adhere to the Security Clearance Suspension/Revocation Process, and while not a specific regulation or policy, it was and  still is the process for suspending or revoking a security clearance typically involving a thorough review of the soldier's case by security clearance adjudicators. This may include factors such as criminal behavior,

4

U.S. District Court
Northern District of Texas

financial problems, substance abuse, or other security concerns, which in all Mr. Burns' time in the US Army, he did not have a problem with, annotated or unannotated.

14. The United States Army III Corps and Fort Hood failed Local Command Policies and Procedures at Fort Hood, which are specific policies and procedures for handling security clearances, including the revocation process.

15. The United States Army failed to allow Mr. Burns Legal Counsel and Due Process: Soldiers facing security clearance revocation are entitled to due process, including the opportunity to respond to allegations and present their case.

16. The United States Army failed Regulation 600-8-19, Enlisted Promotions and Reductions, which explain how rank or status may be a consequence of security clearance revocation. AR 600-8-19 outlines the promotion and reduction policies for enlisted      soldiers. Mr. Burns was in fact enlisted.

17. At this time, plaintiff's counsel is not sure if the United States Army failed Executive Order 13488 (January 16, 2009), Executive Order 13526 (December 29, 2009), Executive Order 13848 (September 12, 2018) or Executive Order 14028 (April 15, 2021), although, given the known information, it is highly likely. However, they do not apply to Mr. Burns' case and should not be applied, as his clearance was wrongfully revoked long before these regulations took effect.

18. It is important to note that while these executive orders provide overarching guidance on  national security and the handling of classified information, specific security clearance determinations and processes are typically conducted by federal agencies, such as the Department of Defense, the Department of State, and the Department of Homeland Security, among others. These agencies have their own regulations and procedures related to security clearances, which may evolve over time in response to changes in national security priorities and threats.

19. Please note that the specific circumstances leading to a security clearance revocation can  vary widely, and the process may involve multiple steps, including investigations, hearings, and appeals. However, Mr. Burns was offered none of these steps. A combat veteran of the United States Army was treated as a war criminal after returning home from war with the United States Army, not by American citizens, but by THE UNITED STATES ARMY. The question is, Why? The short answer is money. The United States Army et al see veterans as nothing more than cost-prohibitive liabilities. Mr. Burns is the proof.

**WHY ADHERANCE TO NATIONAL SECURITY CLEARANCE LAWS ARE IMPORTANT**

20. The revocation of a soldier's security clearance for purely disciplinary reasons raises significant moral, ethical, and legal concerns. While maintaining discipline within the military is crucial, it is equally important to uphold individual rights and adhere to federal laws. The United States Army should explore why revoking a soldier's security clearance solely for disciplinary reasons is morally and ethically wrong, detrimental to national security, and violates several federal laws.

21. For one thing, there are ethical and moral concerns, such as individual rights and due process, which do not go away simply because one chooses to serve in the United States military.

U.S. District Court
Northern District of Texas

22. Revoking security clearances for disciplinary reasons without a fair and transparent process violates the soldier's right to due process. Every individual, regardless of their profession, deserves a chance to defend themselves against allegations.

23. Next, there is the potential for abuse of power, which is one area which fits perfectly with Mr. Burns' case, in his opinion. Allowing security clearance revocation for disciplinary    purposes without proper oversight creates a risk of abuse of power within the military   hierarchy upper echelons. This can lead to unjust decisions and potential harm to soldiers'    careers and livelihoods, such as what was done to Mr. Burns.

24. In the United States Army, there should be adherence to principles of justice by ALL. The principles of justice and fairness demand that disciplinary actions are proportionate to the offense committed. Revoking a soldier's security clearance, which can have far-reaching consequences and threaten national security, for relatively minor infractions is ethically questionable, to say the least.

25. There are negative national security implications to what the United States Army has and continues to do regarding illegally revoking security clearances, and the effects of what the United States Army does (or fails to do) in this matter will be measured throughout history.

26. Illegally revoking security clearances leads to a loss of experienced, motivated, and skilled personnel. Such actions may weaken the military's readiness and capabilities and have already had a chilling effect on recruitment activities globally. Also, it has a chilling effect on reporting misconduct, as soldiers may be hesitant to report misconduct or wrongdoing if they fear that doing so might lead to retaliation in the form of security  clearance revocation. This effect can hinder efforts to maintain discipline and integrity within the ranks.

27. When the United States Army breaks the law in such as a way as illegal security clearance revocation, there is an obvious and unnecessary diversion of resources spent on investigating and revoking clearances for disciplinary reasons that could be better allocated to addressing legitimate national security threats. In short, unnecessary disciplinary actions divert resources away  from more critical matters and could cost lives.

28. The United States Army has violated federal law and regulations, and until this matter is properly adjudicated, Mr. Burns remains vigilant and steadfast until adjudication  completion. Compliance with Federal Regulations which govern the granting, revocation, and maintenance of security clearances is crucial to national security. Revoking a security clearance for purely disciplinary reasons runs afoul of these regulations. Obviously, it is   up to Mr. Burns to ensure that the United States Army et al does not forget this fact.

29. The United States Army has failed to adhere to the Americans with Disabilities Act (ADA). If the disciplinary reason for revocation is related to a soldier's disability, which   is in fact Mr. Burns' claim, then it constitutes discrimination under the ADA, which prohibits discrimination against individuals with disabilities, regardless of a person's current or former military service.

30. The United States Army has failed to adhere to whistleblower protection laws. The United States Army has also failed to protect national security. Revoking security clearances as retaliation against soldiers who report misconduct violates federal whistleblower protection laws, which are essential for the reporting of wrongdoing within government agencies, thereby a threat to national security.

6

U.S. District Court
Northern District of Texas

31. In summarization, revoking a soldier's security clearance for purely disciplinary reasons raises significant moral, ethical, and legal concerns. Such actions risk violating individual rights, can have adverse consequences for national security, and run counter to federal laws and regulations. It is essential for the United States Army to balance the need for discipline with the principles of justice, fairness, and adherence to the law to ensure the rights and security of its personnel and our national interests, foreign and domestic, but thus far, the United States Army has failed.

## COMPLAINT CAUSE II FOR ACTION

### DISCRIMINATION, NEGLIGENCE: EGREGIOUS VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

32. Like security clearance revocations, the process for the revocation of a veteran's status and benefits from the U.S. Army Temporary Disability Retirement List (TDRL) is governed by various regulations and policies which the United States Army has failed to adhere to. Here are some key references and guidelines to help defense counsel, the court, and the jury better grasp the nature and gravity of this complaint as a whole:

33. The United States Army has and continues to fail Title 10, United States Code, Section 1210, which is the foundational law that establishes the Temporary Disability Retirement List (TDRL) for members of the Armed Forces.

34. The United States Army has failed Department of Defense Instruction (DoDI) 1332.38, Physical Disability Evaluation, which is instruction providing overarching guidance on the disability evaluation system for all branches of the military, including the TDRL. It outlines the processes and procedures for determining disability ratings and retirement eligibility.

35. The United States Army has failed Regulation (AR) 635-40, Physical Evaluation for Retention, Retirement, or Separation, a specific Army regulation that governs the physical evaluation process, including the placement of soldiers on the TDRL and the conditions for removing individuals from the TDRL.

36. The United States Army has failed DoD Manual 1332.18-M, Manual of Military Decorations and Awards, which contains information related to the award of military decorations and retirement benefits, which is at all times relevant in cases involving the TDRL.

37. The United States Army has failed to adhere to its own United States Army policy related to TDRL, and the United States Army and the Department of Veterans Affairs (VA) have failed to adhere to VA Policies:

38. While the TDRL is administered by the Department of Defense (DoD), veterans transitioning from the TDRL to permanent retirement may also be eligible for VA benefits. VA policies and regulations will apply to the determination of disability compensation and healthcare for veterans.

39. The United States Army and the VA has failed all regulations regarding Combat Related Special Compensation and has failed to inform Mr. Burns why. Combat-Related Special Compensation (CRSC) is a program that provides eligible military retirees such as Mr. Burns with tax-free compensation to replace some or all their retired pay that is offset by their Department of Veterans Affairs (VA) disability compensation. The policies and regulations governing CRSC for

7

U.S. District Court
Northern District of Texas

the United States Army, like other branches of the military, are primarily outlined in Department of Defense (DoD) directives and instructions, as well as the United States Code and the Code of Federal Regulations. Here are some key policies and regulations that specifically cover CRSC that were circumvented by the United States Army and the VA and that were enabled by the Defense Finance and Accounting Service (DFAS):

40. Title 10, United States Code, Section 1413a (10 U.S.C. § 1413a): This is the primary statutory authority for CRSC. It outlines the eligibility criteria and requirements for CRSC, as well as the calculation of CRSC payments.

41. Department of Defense Instruction (DoDI) 1332.39, "Application of the VA Schedule for Rating Disabilities" (December 23, 2005): This instruction provides guidance on the application of the VA Schedule for Rating Disabilities and how it relates to CRSC eligibility and calculations.

42. Department of Defense Financial Management Regulation (DoD FMR), Volume 7A, Chapter 44: This chapter of the DoD FMR provides detailed information on CRSC, including eligibility criteria, application procedures, and the computation of CRSC payments.

43. Army Regulation (AR) 600-8-7, "Retirement Services Program" (August 11, 2021): While this Army regulation primarily covers retirement services, it also includes information on CRSC eligibility and the application process for Army retirees.

44. Army Regulation (AR) 635-40, "Physical Evaluation for Retention, Retirement, or Separation" (December 30, 2020): This regulation outlines the process for determining an individual's disability rating and how it may relate to CRSC eligibility.

45. Department of Veterans Affairs (VA) regulations: While not specific to the Army, the VA plays a critical role in the CRSC process by providing disability ratings. VA regulations, found in Title 38 of the Code of Federal Regulations, include information on disability ratings, benefits, and the interaction between VA disability compensation and CRSC. Understanding the rules gives one a crucial understanding of just how great the United States Army's abandonment of Mr. Burns when he needed help the most, really is.

46. The United States Army failed to allow Mr. Burns Legal Counsel and Due Process. Individuals facing potential revocation of their TDRL status and benefits are entitled to due process, including the opportunity to provide evidence and argue their case. Legal counsel can be instrumental in this process.

47. The United States Army failed to take into consideration Mr. Burns' individual circumstances and Medical Evaluations.

48. Decisions regarding the removal of individuals from the TDRL are typically based on individual medical evaluations, including reviews of the progress of the medical condition. Consultation with medical professionals and military healthcare providers is crucial. However, the United States Army does NOT in fact see it this way. Mr. Burns is the proof.

49. It is important to note that the process for removing a veteran from the TDRL can vary based on individual circumstances, medical evaluations, and the specific regulations in effect at the time. Veterans who find themselves facing potential removal from the TDRL should work closely with military personnel offices, medical professionals, and legal counsel to navigate the

process and understand their rights and benefits, which the United States Army goes out of its
way to discourage. Mr. Burns is the proof.

## WHY ADHERANCE TO TDRL LAWS ARE IMPORTANT

50. Adherence to TDRL laws is important first because of moral and ethical concerns,
specifically breach of trust and commitment. How can Mr. A. Citizen McTaxpayer know  from
the outside looking in that the United States Army ever even ATTEMPTED to assist Mr. Burns in
his time of need?

51. What does that mean? It means that veterans who have been placed on the TDRL have
typically served their country with honor and sacrifice. Removing troops such as Mr. Burns
from the list with no due process is seen as a breach of the trust and commitment made to them in
exchange for their service.

52. Secondly, following TDRL laws is important because by not following them, it has a definite
impact on veterans' well-being. Veterans on the TDRL often have ongoing medical and
psychological conditions resulting from their service. Removing them from the list can have
adverse effects on their physical and mental well-being, exacerbating their suffering. This is
most definitely the case with Mr. Burns, and he can point to no one else to blame besides  the
United States Army, the VA, and DFAS.

53. The United States Army and the Court has a moral obligation to care. Society has a moral
obligation to care for its veterans, particularly those with disabilities incurred during their
service. Removing them from the TDRL without due consideration of their needs can be
considered morally indefensible, and Mr. Burns certainly takes this position.

54. The United States Army is contributing to increasing Veteran suicide rates. Removing
veterans from the TDRL adds stress and uncertainty to their lives, potentially worsening their
mental health. Veterans facing disability-related stressors are at an increased risk of suicide.

55. The United States Army et al has caused Mr. Burns a loss of not only benefits, but support.
Veterans of the TDRL often rely on the benefits and support provided by the program. Removal
can result in a loss of vital resources, including medical care, further pushing veterans to the
brink of suicide.

56. The United States Army increases the stigmatization of its own troops. The removal of
veterans from the TDRL can stigmatize them, making them feel like burdens or failures,   which
can lead to feelings of hopelessness and isolation—a significant factor in veteran suicides.

57. In addition, the United States Army has been and continues to be in contravention of Federal
Laws, including the Americans with Disabilities Act (ADA). The ADA prohibits  discrimination
against individuals with disabilities, including those acquired during military service. Removing
veterans from the TDRL based solely on their disabilities is seen just how Mr. Burns sees it:
discriminatory. Mr. Burns thinks a wise jury will agree.

58. The United States Army has failed to provide fair treatment and accommodation. How? Federal
laws, including the ADA, require fair treatment and reasonable accommodation for individuals
with disabilities. Removing veterans from the TDRL without consideration of their disabilities
may violate these principles.

U.S. District Court
Northern District of Texas

59. The United States Army may have broken EVEN MORE laws than those I have listed. Veterans have legal rights to the benefits and support provided through programs like the TDRL. Removing them without adequate justification may infringe upon these rights and contravene federal laws.

60. Does the United States Army care about its own soldiers? About veterans? Mr. Burns is overly eager to ask the United States Army et al these questions and more in front of a jury. And the American public deserves to hear their answer and Mr. Burns' rebuttal.

61. The removal of veterans from the Temporary Disability Retirement List is a matter that goes beyond mere administrative bureaucratic procedures. It implicates moral, ethical, and legal considerations. Such removal can harm veterans' well-being, contribute to the alarming rates of veteran suicides, and potentially run afoul of federal laws, including the ADA. It is incumbent upon society, policymakers, and veterans' advocates to ensure that veterans receive the support and respect they deserve, in accordance with both moral principles and the law. Only through compassionate, responsible, and just treatment can we truly honor the service and sacrifices of our veterans. Has Mr. Burns received compassionate, responsible, and just treatment? He would like a court of law to decide.

62. Mr. Burns cannot emphasize more emphatically how complex the removal of veterans from the Temporary Disability Retirement List (TDRL) is and that it is an issue that raises serious moral, ethical, and legal concerns. A court of law should explore why removing veterans from the TDRL can be morally and ethically wrong, contributes to increasing veteran suicide rates, and may be in contravention of federal laws, including the Americans with Disabilities Act (ADA).

63. Let us be very frank and very clear: the removal of Mr. Burns from TDRL without notification violated the provisions of federal law and regulations that require clear and timely notice of any proposed action affecting Mr. Burns' military status and benefits. The United States Army's actions deprived Mr. Burns of his constitutionally protected right to due process under the Fifth Amendment to the United States Constitution, and this alone is grounds for argument in front of a jury. Mr. Burns was never afforded a fair and meaningful opportunity to be heard, to present evidence, or to challenge the removal decision. Mr. Burns disability, for which he was placed on the TDRL, is a protected disability under the ADA. The United States Army's actions may constitute discrimination based on Mr. Burns' disability and a violation of the ADA's anti-discrimination provisions.

**COMPLAINT CAUSE III FOR ACTION:**

**DISCRIMINATION THROUGH UNETHICAL REPRISALS**

**REVOKING AN ACTIVE-DUTY SOLDIER'S SECURITY CLEARANCE AS A MEANS OF PUNISHMENT IS A FEDERAL CRIME, PUNISHABLE BY LAW**

64. After his third combat tour, Plaintiff Kenon Burns' attorney was able to thwart the United States Army's failed unscrupulous attempt at discharging him under United States Army Regulation 635-200, Chapter 5-17 as an obvious attempt to defraud him out of his military benefits (as they've done to documented countless other service members, saving the United States Department of Defense over USD $3 billion).

U.S. District Court
Northern District of Texas

65. Only after plaintiff retained legal counsel from the firm of National Veterans Legal Services Program was he successful in forcing the United States Army to honor their duty and obligation to him, as he had honored his oath of enlistment for the United States of America during Operation Iraqi Freedom 1, Operation Iraqi Freedom 05-07, and Operation Iraqi Freedom 08-09.

66. Directly following this crusade that the United States Army chose to wage against Mr. Burns, Mr. Burns' security clearance was mysteriously revoked without due process while still on active duty in the United States Army. This revocation, without prior notification or adjudication, was in fact an egregious contravention of United States Code of Federal Regulations (CFR) and United States Army regulations in effect in 2008 which Mr. Burns has since verified was done as a means of reprisal for the correct reporting of unidentified phenomena as he had been trained to do. A security clearance was essential for his duties and responsibilities within the United States Army and was granted in accordance with the applicable regulations and guidelines at the time it was bestowed.

67. The United States Army failed at notification. Mr. Burns was not adequately notified of the reasons for the revocation of his security clearance, which left him without a clear understanding of the allegations against him or the opportunity to respond effectively. Question: How many others has this happened to? A jury will want to know.

68. The United States Army failed to follow established procedures. The revocation of Mr. Burns security clearance did not adhere to the established procedures outlined in the regulations in effect in 2008, which are listed herein.

69. The United States Army failed to acknowledge but should have known full well what the ramifications of its illegal and unethical action of revoking of Mr. Burns' security clearance had the potential of doing, and the severe consequences it has had on his military and civilian careers and prospects has hindered Mr. Burns' ability to perform his duties and maintain his position in all endeavors post-Army.

70. Following his exit from the US Army, as a direct result of this illegal security clearance revocation due to reprisal, Mr. Burns was immediately laid-off from his position at AAI Corporation and suffered undue and unnecessary financial hardship and has never fully been able to regain his former financial footprint as it was after exiting the United States Army.

71. As a direct result of this illegal security clearance revocation reprisal, Mr. Burns was forced to cash in all his Thrift Savings Plan, which cannot be re-enrolled in under any circumstances, resulting in an untold amount of savings that would have undoubtedly earned Mr. Burns tens if not hundreds of thousands of dollars in gains.

72. Although numerous congresspersons and high-ranking members of the United States Army have direct knowledge of reprisals against Mr. Burns (proof of which Mr. Burns retains securely in his possession), excuses were made, and apologies were offered, however nothing was ever done to correct the egregious breach of regulation and non-adherence to security clearance protocol. This attitude from military leaders is one that endangers our national security and is even more of a national security threat now than it was when it occurred to Mr. Burns.

U.S. District Court
Northern District of Texas

73. Quoting then Colonel Fish of Fort Hood, "Upon receipt of the pertinent file, a check of the JPAS showed an additional incident report annotation on 19 August 2009 from SPC (R) Burns unit stating that he was chaptered out of the Army.  CCF then entered a "Loss of Jurisdiction" into JPAS." Colonel Fish referred to Plaintiff Burns as SPC (R) in his letter, which denotes retiree, a title Colonel Fish knew fully well would be impossible had Mr. Burns been chaptered 5-17 out of the US Army. And although Mr. Burns can fully understand how CCF had a loss of jurisdiction, he cannot understand how it is that CCF was allowed to enter an erroneous annotation from 19 August 2009 stating that he was "chaptered out of the Army" from a unit that Mr. Burns was no longer a member of. Mr. Burns also cannot understand how it is that a full bird Colonel in the United States Army and at his position not only encouraged this event to happen, but also cannot understand how Colonel Fish obviously did not know the difference between a Chapter 5-17 and a military medical retirement. Military commanders tell lies. Official government orders that have a number attached to them do not.

74. Mr. Burns' military retirement orders are dated 05 June 2009.

75. Mr. Burns digitally signed his DD214 in June 2009, and Blocks 23 & 24 read "Retirement" and "Honorable" respectively for "Type of Separation" and "Character of Service," as they should.

76. Mr. Burns' terminal leave from the US Army started in June 2009.

77. According to U.S. Army Regulation 604-5, Mr. Burns fails to understand how it was proper protocol for him not to find out his clearance was revoked until he had already began working for AAI Corporation all of September and most of October 2009, especially since on 19 August 2009 (the date referenced by COL Fish in his letter to Mr. Burns) Mr. Burns was still on Active Duty with Headquarters & Headquarters Company 2-7 Infantry Battalion, 4th Brigade Combat Team, 1st Cavalry Division, Fort Hood, Texas.

78. This would mean that an obvious and egregious breach of more than one federal and US Army regulation was allowed and encouraged to be made by upper echelons and is probably the reason this issue has dragged on for so long. Mr. Burns believes a jury of his peers would agree.

**COMPLAINT CAUSE IV FOR ACTION: FRAUD WASTE OR ABUSE BY MEANS OF NEGLIGENCE**

**REVOKING A COMBAT VETERAN'S MEDICAL RETIREMENT PAY AND BENEFITS AS A MEANS OF PUNISHMENT IS A FEDERAL CRIME, PUNISHABLE BY LAW**

79. Medical negligence because Mr. Burns' original removal from the United States Army TDRL and what was then the United States Army Wounded Warrior Program was in direct contravention of federal law and United States Army regulations. Veterans on the Temporary Disability Retirement List (TDRL) are entitled to due process when facing removal from the list. Due process is a fundamental constitutional right, and individuals cannot be deprived of their property interests (such as retirement benefits) without it. Therefore, the removal of a veteran from the TDRL typically involves a fair and structured process, including the opportunity to be heard and present

U.S. District Court
Northern District of Texas

evidence. EXCEPT in Mr. Burns' case. If the United States Army has ONLY behaved against Mr. Burns in this fashion, this is clear discrimination. If there are other veterans going through this issue, as potentially may be the case, it is indicative of a systemic Ponzi-scheme like fraud the likes of which the American public has never imagined. The United States Army will have no choice but to somehow silence Mr. Burns if it is expected that he should remain silent about such egregious violations of federal law against United States combat veterans.

80. It is essential to understand that the Americans with Disabilities Act (ADA) primarily applies to discrimination against individuals with disabilities in employment, public services, and public accommodations. While the ADA is not directly related to the TDRL process, the ADA's provisions can still be relevant in certain situations, such as cases where a veteran's disability is a factor in their treatment or removal from the TDRL.

81. If a veteran believes that their removal from the TDRL was based on discrimination related to their disability, including claims under the ADA or other relevant laws, due process rights generally govern the TDRL process, ensuring that veterans have an opportunity to challenge their removal and present evidence related to their disability and medical condition. The United States Army has failed Mr. Burns in this regard.

82. Veterans on the TDRL should expect a due process procedure when facing removal from the list. While the ADA may not directly apply to the TDRL process, it can be relevant in cases involving disability-related discrimination.

83. At this time, Mr. Burns' military medical retirement pay has been mysteriously revoked, without prior notification and without proper adjudication, in contravention of countless regulations. Mr. Burns has no choice but to believe that this is yet another attempt at forcing Mr. Burns to suffer further reprisals for defeating the United States Army's attempts at swindling him out of what is rightfully his that he fought for this country to receive, which are his medical retiree benefits. Military medical retirement pay should not be confused with welfare benefits. United States citizens do not swear an oath to defend the United States against all enemies foreign and domestic, get sniped at, or risk their life driving past IEDs to obtain public assistance. At least not to the knowledge of Mr. Burns or his counsel.

84. As a direct result of Mr. Burns' military medical retirement pay revocation reprisal and his inability to obtain work in his chosen career field due to security clearance reprisal, Mr. Burns not only suffers undue and needless financial hardship, but his already fragile mental and psychologically well-being suffers as well, which he believes is the very point of the psychological warfare waged against him at this time at the hands of the United States Army. In essence, Mr. Burns feels that at this time, he is a target of some of the very counterintelligence tactics that he has been trained to learn while a member of the United States Army Intelligence Corps. However, he remains steadfast that wrongdoing has in fact occurred, and will not leave this matter to rest without receiving resolution.

85. To quote from https://www.dfas.mil/retiredmilitary/disability/VA-Waiver-and-Retired-Pay--CRDP--CRSC.html: "Many military retirees who are eligible for DoD retired pay are also eligible for VA disability pay. The laws and regulations that apply when a retiree is eligible for both types of pay are complex and can be confusing. The law requires that a military retiree waive a portion

U.S. District Court
Northern District of Texas

of their gross DoD retired pay, dollar for dollar, by the amount of their Department of Veterans Affairs (VA) disability compensation pay; this is known as the VA waiver (or VA offset). Some retirees who receive VA disability compensation may also receive CRDP or CRSC payments that make up for part or all of the DoD retired pay that they waive to receive VA disability pay."

86. After evidently attracting an abundance of attention to this issue, Mr. Burns has in fact been visited by two persons claiming to be members of the United States Department of Homeland Security and the United States Secret Service respectively and was then surveilled and engaged by the Federal Bureau of Investigation (Jae Carlton Beasley). Additionally, the Department of Veterans Affairs has contacted law enforcement after Mr. Burns has brought up this issue, and Mr. Burns has audio and video evidence of his claims, yet still refuses to relent and let the United States Army willingly turn its back on a soldier that has answered the call to duty.

87. Mr. Burns believes his life is and has been in immediate and grave danger for continuing to attempt to engage the United States Army in conducting a fair and thorough investigation of this matter and this belief has only been strengthened by visits from alleged members of US DHS and FBI and by reading declassified documents detailing the FBI's protocol and tactics of pursuing individuals whom they deem a threat (Dr. Martin Luther King for instance) on their own website, FBI.gov.

88. Mr. Burns believes that by publicly vocally alerting people of his fear of immediate and grave danger, any attempt (successful or otherwise) on Mr. Burns' life would be deemed proof of obfuscation and indisputable evidence of foul play. The United States Army, for unknown reasons, has taken on the role of Mr. Burns' sole and only arch nemesis. Mr. Burns eagerly awaits explaining the United States Army's obvious and open campaign against him in court.

89. Mr. Burns has been trying unsuccessfully for over a decade to have a full investigation into why federal and United States Army regulations were encouraged to be broken at the highest levels of the United States Army and Department of Defense, and it is disheartening, yet suspicious that an issue such as national security is not being taken seriously as this global issue gets worse.

90. Mr. Burns believes he has been suffering reprisals and financial hardship resulting in documented breaks in pay from the United States Department of Veteran Affairs and the United States Army (via the Defense Finance and Accounting Service) ever since exiting service after his third combat tour.

91. Mr. Burns has obviously and understandably lost faith in "the system" that is United States government and military bureaucracy, and as a result, feels his only legal and sane hope for attention to and resolution of this issue is full media and court exposure of the pertinent matters at hand, but still remains patient and diligent that the system will work for instead of against him and that truth will eventually prevail before trial is a definite eventuality instead of an imminent one.

92. Defense Manpower Data Center (DMDC) and TRICARE are duplicitous in all claims elucidated herein, as the failure of due process and any revocations are as a direct result of their complicity.

U.S. District Court
Northern District of Texas

## WHAT PLAINTIFF HOPES TO GAIN FROM INTERLOCUTORY ARBITRATION AND PRE-TRIAL MEDIATION

### PROPOSED ADJUDICATION

The United States Army has granted Mr. Burns disability separation retirement effective June 5, 2009, as per Headquarters III Corps and Fort Hood Order #156-0116. The Army Human Resources Command Combat-Related Special Compensation Branch has granted a decision of "Combat Related" for Claim #164392, dated June 11, 2010. Mr. Burns has received no severance pay from the United States Army.

Mr. Burns demands immediate reversal of discharge of veteran from temporary disability retired list, and immediate retroactive reinstatement of veteran's disability retirement pay effective September 1, 2014, through present.

Mr. Burns demands immediate investigation into whether the legality of this pay termination is in question per the governing regulation in force at time of termination.

Mr. Burns demands immediate investigation/adjudication of why the security clearance issue was encouraged to happen and not investigated thoroughly.

Mr. Burns demands immediate investigation into whether the legality of this clearance revocation is in question per the governing regulation in force at time of termination.

Mr. Burns demands investigation of why Mr. Burns is not able to re-enroll in Thrift Savings Plan, since his withdrawal from the system was as a direct result of reprisals from the United States Army.

Mr. Burns demands immediate reinstatement of the Temporary Disability Retirement List benefits and enjoyments that Mr. Burns is entitled to by federal law, since it is his belief that his payment revocation is a direct result of reprisals from the United States Army, in contravention of the Americans with Disabilities Act (ADA).

Mr. Burns demands immediate reinstatement of Mr. Burns into the United States Army Temporary Disability Retirement List or immediate entry into the United States Permanent Disability Retirement List, which Mr. Burns was ejected from as a direct result of reprisals from the United States Army.

Mr. Burns demands immediate reinstatement of Mr. Burns' TRICARE benefits, which Mr. Burns believes have been revoked as a direct result of reprisals from the United States Army.

Mr. Burns demands immediate reinstatement in the United States Army Wounded Warrior Program, or whatever its comparable replacement is, which Mr. Burns believes he was ejected from as a direct result of reprisals from the United States Army.

Mr. Burns requests a jury to decide allegations contained in this complaint, if they are actionable at law and at equity with remedies in damages and injunctions, and Mr. Burns respectfully asks the Court to proceed with this information accordingly, or there is the

U.S. District Court
Northern District of Texas

possibility that the negative actions and consequences of actions of defendant against Mr. Burns will continue unabated ad infinitum ad nauseum upon others if the Court fails to act. Mr. Burns demands all other appropriate remedies to rectify the situation and mitigate or reverse the harm caused by the revocation of his security clearance and his health and wellness benefits.

Mr. Burns does not think that his requests would overburden the American taxpayer, the requests are economically feasible to implement considering the service Mr. Burns has given to the United States government and given the nature of the misconduct perpetrated on the part of the United States Army against Mr. Burns, he does not think these requests are at all disrespectful in nature

Mr. Burns is OBVIOUSLY not going to EVER give up. His endurance and tenacity in this issue, despite the attitude of the United States Army et al, knows no bounds, to be sure.

### ADDITIONAL RELIEF REQUESTED TO BE ADMINISTERED AS A JURY SEES FIT

If this case proceeds to trial, Mr. Burns will additionally respectfully request from the court the following relief:

An injunction reinstating Mr. Burns to the U.S. Army TDRL until a proper, LAWFUL procedure is followed for any future removal decisions.

A written apology and declaratory judgment and statement that not only details that the defendants' actions violated federal law, but what those actions were, including the violation of Mr. Burns' due process rights and, if applicable, the ADA.

An award of damages, including but not limited to lost benefits and compensation, associated with Mr. Burns' illegal removal from the TDRL without due process.

Attorneys' fees and costs incurred in pursuing this legal action.

Any other appropriate remedies and relief deemed just and equitable by a jury in a court of law.

U.S. District Court
Northern District of Texas

All the following federal laws (and more) were contravened when the United States did not give me due process under the law.

Executive Order 12968

Executive Order 10865

The National Industrial Security Program (NISP) Executive Order 12829

DoD Directive 5200.2

DoD Regulation 5200.2-R

AR 380-67

AR 380-5

AR 600-8-2

AR 635-200

The National Security Adjudicative Guidelines

Director of Central Intelligence Directive (DCID) 6/4

Intelligence Community Directive (ICD) 704.

Defense Security Service (DSS) National Industrial Security Program Operating Manual

Title I of the ADA

ADA Amendments Act of 2008

DoD Directive 5200.2

AR 380-67

Adjudicative Guidelines for Determining Eligibility for Access to Classified, Guideline I

Veterans' Employment and Training Service (VETS)

Uniformed Services Employment and Reemployment Rights Act (USERRA)

Office of Federal Contract Compliance Programs (OFCCP)

Job Corps Policies

10 U.S. Code § 1202

Department of Defense Instruction (DoDI) 1332.18

Department of Defense Instruction (DoDI) 1332.38

AR 635-40

Army Regulation 600-60

Secretary of Defense Memorandum (April 3, 2008)

U.S. District Court
Northern District of Texas

Veterans Benefits Act of 2010

Board for Correction of Military Records (BCMR) policies

Administrative Instructions for Medical Boards and Physical Evaluation Boards

10 U.S. Code § 1413a

Department of Defense Instruction (DoDI) 1332.25

Department of Defense Financial Management Regulation (DoDFMR), Volume 7B, Chapter 63

Defense Finance and Accounting Service (DFAS) procedures

CRSC Joint Services Memorandum

Public Laws 108-375 and 107-107

Veterans Benefits Act of 2003

Department of Defense Memorandum on the Implementation of Combat-Related Special Compensation (2004)

U.S. District Court
Northern District of Texas

## WHY PLAINTIFF DEMANDS TRIAL BY JURY

There are numerous enjoyments Mr. Burns may have the privilege of legally benefitting from by having a jury hear his complaint, as opposed to a judge or a panel of judges adjudicating the matter. There is no need for this case to proceed to Federal Claims Court, as any experienced federal trial judge should be able to quickly address and adjudicate that in this instance, the United States Army et al was wrong. Mr. Burns was denied the benefit of legal counsel or due process on more than one occasion and was denied that counsel and due process as direct result of the United States Army et al misgovernance and malfeasance. Here, I delineate a list of potential benefits the public interest may enjoy from a jury trial pertaining to this matter:

*Community Representation*:

Diverse Perspectives: A Texas jury will be composed of a diverse group of people who can potentially bring a wide range of perspectives to the case.

Community Values: A jury can represent community values and standards, potentially leading to a verdict that is more in line with the public's sense of justice. It only makes sense to have a jury trial in this case, as the United States military exists to protect the people of the United States, not just its land and borders.

*Neutral Decision-Making*:

Less Bias: Texas juries are generally laypersons not involved in the legal system, which can potentially reduce the influence of legal biases.

Fresh Perspective: A Texas jury can bring a fresh and unbiased perspective to the case, as they are not entrenched in the legal system.

*Mitigation of Harsh Laws*:

Equitable Verdicts: Juries have the ability to deliver verdicts that might mitigate the potentially harsh effects of strict legal principles. This has the potential to work in favor of both parties actionable to this case, as all Mr. Burns really wants is for the United States Army et al to honor their oath to him, as he has "honorably" honored his oath for the United States Congress.

Jury Equity: Sometimes, juries might decide cases based on their sense of fairness and equity, which might not strictly adhere to the letter of the law, but overall provides fairness and closure to a serious legal matter.

*Protection Against Governmental Oppression*:

Check on Government: Jury trials function as a check on governmental power, ensuring that individuals have a voice in the judicial process, which Mr. Burns cannot overemphasize is a crucial part of his complaint.

U.S. District Court
Northern District of Texas

Protection of Individual Rights: Juries, especially in the state of Texas serve as a protection against unfair laws and governmental oppression.

*Personal Connection*:

Empathy and Understanding: Since Texas has many combat veterans, what the law would call Mr. Burns' peers, a Texas jury might be more capable of empathizing with Mr. Burns, understanding his plight from both a legal and non-legal standpoint.

Human Element: The presence of a jury brings a more human element to any trial, as opposed to a trial that is adjudicated solely based on legal principles, technicalities, and administrative bureaucracy.

## CONCLUSION

Mr. Kenon L Burns brings this complaint to federal court to seek redress for the violations of federal law and regulations by the United States Army et al that have caused harm to his military status, benefits, and overall well-being. Further, Mr. Burns will ask the federal court to adjudicate this matter fairly and expeditiously, ensuring that his rights and the rights of other combat veterans are protected, justice is served, and combat veteran suicides decrease.

Plaintiff Burns appreciates the Court's prompt attention to this matter and your commitment to upholding the principles of justice and due process, if you have in fact taken on that commitment in your heart and deeds, and not just your words. Since so much time has passed because of the delay, evasion, and obfuscation on the part of the United States Army et al, Mr. Burns cannot look forward to a timely resolution of this issue but prays that it is resolved before Taps is played for him when he too, finally, fades away. Mr. Burns was laughed at by a United States Congressperson's aide for continuing to "make a big stink" about this situation. Mr. Burns was asked what his actions would be, and would they be "to make a federal case outta this." This complaint should serve as his answer. This should never happen to another combat veteran.

On 2/29/2024 I filed this complaint with the clerk of court for the U.S. District Court, Western District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

_____

Kenon L. Burns

Pro se

13245 Atlantic Blvd

STE 4-136

Jacksonville, FL 32225

E-mail: kenon_burns@yahoo.com

Telephone: (248) 208-5739

KENON LEROY BURNS
13245 ATLANTIC BLVD 4 136
JACKSONVILLE, FL 32225

****************AUTO**SCF 760          PL1 T14  P2 S1641
CLERK OF THE COURT
800 FRANKLIN AVE RM 380
WACO TX 76701-1934

Presorted
First Class Mail
U.S. Postage
PAID
Permit 634
San Francisco, CA

23cv698

PL1 T14 P2 S1641

KENON LEROY BURNS
13245 ATLANTIC BLVD 4 136
JACKSONVILLE, FL 32225

**********AUTO**SCF 760
CLERK OF THE COURT
800 FRANKLIN AVE RM 380
WACO TX 76701-1934

RECEIVED

MAR 11 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK